UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

STEWART GOLDSTEIN

        PLAINTIFF

-AGAINST-

POLICE OFFICER DARNELL EASON
(TRIBORO BRIDGE AND TUNNELS,
TAX REG#589698)
OFFICER LOPEZ (TRI-BORO BRIDGE
AND TUNNELS),
SGT. ANTHONY POWELL
(TRIBORO BRIDGE AND TUNNELS
TAX #601069),
OFFICER HOWARD (TRIBORO BRIDGE
AND TUNNELS), JOHN DOE
AND CITY OF NEW YORK

VERIFIED COMPLAINT WITH JURY DEMAND

INDEX #

DATE PURCHASED:

---

## THE PARTIES

1. The plaintiff Stewart Goldstein resides in Queens, New York

2. All named Defendants are Tri-Boro Bridge and Tunnel officers and a sergeant, whose interaction with plaintiff was located on the Queens side of the Triboro Bridge.

3. The City of New York is located at 100 Church Street, New York, NY

## JURISDICTION

4. The federal court has jurisdiction over this matter as it raises a federal question.

**DEFENDANTS DARNELL EASON, SGT. ANTHONY POWELL, OFFICER HOWARD, AND OFFICER LOPEZ VIOLATED 42 USC SECTION 1983 FOR VIOLATING PLAINTIFF'S FIRST AMENDMENT (FREE SPEECH), FOURTH AMENDMENT (UNLAWFUL SEARCH, SEIZURE AND EXCESSIVE FORCE) AND 14TH AMENDMENT RIGHTS (LIBERTY AND FAIR TRIAL)**

5. Plaintiff, a retired New York City Police Officer, was driving with his son on October 9, 2016 and was approaching the toll lanes on the Queens side of the Triboro Bridge.

6. Plaintiff signaled and made a lawful lane change.

7. In the process of making a lane change defendant Officer Darnell Eason positioned his body in front of plaintiff's car, as it was in between two lanes, and placed his foot on the wheel of the vehicle, forcing plaintiff to abruptly stop.

8. Plaintiff found this behavior dangerous, erratic and disturbing- since it appeared that defendant Eason was daring him to run him over and risking his own life by positioning his body in front of a moving car, and placing his foot on the wheel.

9. Officer Eason, who was wearing a raincoat, did not have any identifying information on him that would identify him as a bridge and tunnel officer, and his behavior was not consistent with the normal actions of a police officer.

10. Plaintiff was stuck in between two lanes and unable to move because Eason's body was in front of the car and his foot was on the wheel.

11. Eason demanded plaintiff hand over his license while his foot was still on the wheel and ordered plaintiff to put the car in park.

12. Plaintiff was uncertain as to whether Eason was a police officer because he did not identify himself as an officer, was not wearing any visible identifying information, and was acting in a completely unreasonable and dangerous

fashion (placing his body in front of a moving car and his foot on the wheel of a moving car to cause plaintiff to abruptly stop, and using his body to prevent plaintiff from safely moving the vehicle from in between two lanes)

13. Eason's conduct put plaintiff in a dangerous situation because he refused to let plaintiff pull over to the shoulder and was forcing him to remain in a car with his son, that was in between two lanes of traffic in pouring rain.

14. Plaintiff called 911 to seek police intervention to report this erratic behavior, which was inconsistent with the conduct of an officer entrusted to deal with the public and was causing plaintiff and his son to remain in a dangerous location between two lanes of traffic.

15. Sgt. Powell, who also wore a raincoat and no identifying information, approached plaintiff's vehicle.

16. Plaintiff advised Sgt. Powell he wanted to wait for NYPD to respond to his 911 call and remained in his vehicle until the NYPD responded.

17. When the NYPD police van responded plaintiff got out of his car to speak to the police.

18. Officers Eason and Lopez immediately ordered plaintiff back in his car, preventing him from speaking to the NYPD officers who had pulled up in response to his 911 call.

19. Plaintiff immediately complied and attempted to reenter his car.

20. Despite plaintiff's compliance with a directive by defendants to reenter his vehicle and to refrain from speaking to the responding NYPD officers, Defendants Eason and Lopez rushed plaintiff, slammed him upper body into

the car and then handcuffed him- making the handcuffs so tight it caused visible bruising to his hands.

21. Despite plaintiff's repeated protestations about how tight the handcuffs were defendants Eason, Powell, Howard, and Lopez refused to loosen the handcuffs and Howard threatened to gag plaintiff if he did not shut his mouth.

22. When defendant Powell observed plaintiff's son pull out his phone, they threatened to arrest him if he did not cease using the phone to record their actions.

23. All of the actions of the aforementioned defendants were done in retaliation for plaintiff reporting police misconduct to 911 and there was no reason for defendants to forcefully effectuate an arrest, other than to stop plaintiff from reporting their misconduct to the responding officers.

24. Plaintiff was arrested without probable cause, and in retaliation for reporting a matter of public concern to 911 in the presence of defendants; and his speech was chilled when they slammed him into the car and handcuffed him- to prevent him from speaking to the responding NYPD officers.

25. Defendants then searched plaintiff, his son, the entire car plaintiff had been driving in, including the compartments in the car and the trunk without a warrant or probable cause.

26. Plaintiff never spoke to the responding NYPD officers that came in response to his 911 call because of defendants actions.

27. Then, in order to further prevent plaintiff from reporting defendants misconduct and to render him unworthy of belief, Sgt. Powell and Officer Eason called for an ambulance- claiming plaintiff was an emotionally disturbed person who needed to be transported to the psychiatric ward, and falsely reporting to plaintiff's son that his 67 year old father had dementia.

28. At the time they made this call they knew that plainitff was not an EDP; that he was mentally competent; posed no threat to anyone; and did not have dementia.

29. Defendants Powell and Eason told plaintiff and his son that plaintiff would be transported to Bellevue as an Emotionally Disturbed Person and they were awaiting an ambulance for transport.

30. All defendants knew plaintiff was a retired police officer, who was completely competent; and posed no threat to himself or others.

31. When the EMTs arrived they examined plaintiff, based on defendants allegations that he was an EDP.

32. The EMT's found no evidence that plaintiff was an emotionally disturbed person and refused to transport him to the psychiatric ward.

33. When the effort to label plaintiff "crazy" failed, defendants then had plaintiff transported to the 108 precinct, where Officer Howard threatened to gag plaintiff- who continued to protest extremely tight handcuffs that were causing visible marks to his wrists.

34. Plaintiff's speech was chilled by defendants actions, who prevented him from reporting this misconduct by arresting him and then trying to have him committed to further render her unworthy of belief.

35. Defendants Eason, Powell and Lopez then concocted a false story about how plaintiff resisted arrest after refusing to return to his vehicle- which was a lie.

36. Plaintiff, a 67 year old retired police officer who was licensed to carry a firearm never resisted arrest, never engaged in disorderly conduct and never engaged in obstruction of government administration- as alleged in defendants' police paperwork.

37. These were all falsified charges created by all of the above named defendants to justify their baseless arrest of plaintiff.

38. Defendants Eason, Powell and Lopez then fabricated a false statement that they claimed was attributable to plaintiff; to wit, "You are only doing this because I'm white."

39. Officer Darnell Eason and Sgt. Anthony Powell then fabricated a police report containing this false information, which they then forwarded to the DA's Office so that the criminal case against plaintiff would appear stronger than it was, and concocted statements they made attributable to plaintiff about his purportedly claiming that they were targeting him because he was white.

40. Defendants actions in arresting plaintiff without a warrant or probable cause; searching his car without a warrant or probable cause; and effectively silencing and chilling plaintiff's speech (and preventing him from reporting a matter of public concern; to wit, police misconduct) by threats, intimidation,

false arrest and efforts to have him committed to the psychiatric ward- were not objectively reasonable.

41. Defendants actions and fabricated police reports have caused plaintiff's license to carry a firearm, as a retired member of the NYPD, to be revoked- based on the lies perpetrated by defendants.

42. All of the above defendants were state actors acting under the color of state law when they violated plaintiff's 4th amendment right to be free from unreasonable searches, seizures and excessive force; 14th amendment liberty right and right to a fair trial free from fabricated evidence; and 1st Amendment right to speak freely about a matter of public concern.

43. Defendants actions were in contravention of 42 USC Section 1983.

44. These rights are clearly recognized rights under the constitution and in the Second Department.

45. All defendants were the proximate cause of injury to plaintiff, in that they have caused plaintiff severe emotional stress and anguish due to their malicious actions; and have caused plaintiff to incur legal fees and court costs.

46. WHEREFORE, plaintiff seeks 5 million dollars in emotional damages, 5 million in punitive damages and $8,000 in compensatory damages.

Dated:     New York, New York
           October 6, 2017

_____
TAMARA M. HARRIS
The Law Office of Tamara M. Harris
111 Broadway, Suite 706
New York, New York 10006
(212) 334-1050

VERIFICATION:

I, Stewart Goldstein, depose and swear under penalty of perjury that the information contained in the foregoing verified complaint is true to the best of my knowledge.

_____
STEWART GOLDSTEIN

Sworn to before me this 9 day of October 2017

_____
NOTARY PUBLIC

JOSEPH MANGINI
Notary Public, State of New York
No. 24-4950203
Cert. Filed in Nassau County
Commission Expires April 24, 2019